**ams**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **MICHAEL J. LEWIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 05-4001-JAR** |
| | ) | |
| **CIRCUIT CITY STORES, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Circuit City Stores, Inc. (Circuit City) filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  (Doc. 6.)  Plaintiff Michael J. Lewis filed a response; Circuit City filed a reply.  On July 1, 2005, the Court determined that the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be converted into a motion for summary judgement because it relied on matters outside the pleadings.  Consequently, the Court gave plaintiff additional time to respond to the motion and present any additional materials to the Court to consider on summary judgment.  The motion is now fully briefed and the Court is prepared to rule.  The Court grants defendant's motion for summary judgment because the complaint is an improper attempt to collaterally attack an arbitration award that was made in accordance with the Federal Arbitration Act (FAA).

## I.  Summary Judgment Standard[1]

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[2]  A fact is only material under this standard if a dispute over it would effect the outcome of the suit.[3]  An issue is only genuine if it "is such that a reasonable jury could return a verdict for the nonmoving party."[4]  The inquiry essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party must prevail as a matter of law."[5]

The moving party bears the initial burden of providing the court with the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[6]  "A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[7]

---

[1]  Defendant urges the case should alternatively be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) because the claim has already been subjected to arbitration.  The Court determines that the most appropriate avenue by which to decide this motion is summary judgment.  The case was removed by defendant from state court based on diversity jurisdiction.  Plaintiff does not contest that the parties are diverse.  "While the Federal Arbitration Act creates federal substantive law requiring the parties to honor arbitration agreements, it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331."  *Southland Corp. v. Keating*, 465 U.S. 1, 16  (1984).  Here, the defendant demonstrated that the Court has subject matter jurisdiction over this case independently based on diversity of the parties when it removed the case.

[2]  Fed. R. Civ. P. 56(c).

[3]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[4]  *Id.*

[5]  *Id.* at 251-52.

[6]  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[7]  *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325).

The burden may be met by showing that there is no evidence to support the nonmoving party's case.[8]

If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set forth specific

facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could

find for the nonmovant."[9]  When examining the underlying facts of the case, the Court is cognizant that

all inferences must be viewed in the light most favorable to the nonmoving party and that it may not

make credibility determinations or weigh the evidence.[10]

## II.  Factual Background

The following facts are either uncontroverted, or viewed in the light most favorable to the

nonmoving party.[11]  On or about August 5, 1996, Lewis signed an Employment Application

(Application) at Circuit City.  The Application, which was drafted by Circuit City, states: "This

agreement requires you to arbitrate any legal dispute related to your application for employment or

employment with Circuit City, Circuit City will not consider your application unless this agreement is

signed."  The second page of the Application contains the Circuit City Dispute Resolution Agreement

---

[8]  *Id.*

[9]  *Id.*

[10]  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[11]  Plaintiff argues that the defendant failed to reply to his Statement of [Additional] Facts set forth in plaintiff's original response, and that the asserted facts should therefore be deemed uncontroverted.  Specifically, plaintiff states that the Court should deem uncontroverted "that defendant's arbitration agreement is inadequate to adjudicate a tort claim and that the same was unilaterally imposed upon plaintiff."  (Doc. 22, at 3-4.)  First, this statement is not included in the original response.  Second, this statement constitutes a legal conclusion and is inappropriately characterized as a statement of fact.  Finally, the Court agrees with defendant that prior to the Court's Order converting this into a motion for summary judgment, the summary judgment local rules of procedure were not binding.  The Court further notes that almost all facts relevant to this motion are uncontroverted as the issue before it is a purely legal one.

(DRA), which states: "I agree that I will settle any and all previously unasserted claims, disputes or controversies arising out of or relating to my application or candidacy for employment, employment and/or cessation of employment with Circuit City, exclusively by final and binding arbitration before a neutral Arbitrator. . . . [S]uch claims include claims under . . . the law of tort."

The DAR incorporates by reference the Circuit City Dispute Resolution Rules and Procedures (DRRP). Under the DRRP, an associate is required to file an Arbitration Request Form along with a filing fee in order to commence an arbitration pursuant to the Application. The DRRP also discusses choice of law and enforceability of an arbitration award under its terms. It states that the arbitrator is to apply the law of the state in which the associate is or was employed. In contrast, it states that the DRA and any award made pursuant to it "shall be enforceable and subject to the Federal Arbitration Act, 9 U.S.C. § 1, et seq., and the Uniform Arbitration Act of Virginia . . . regardless of the State in which the arbitration is held or the substantive law applied in the arbitration." The DRRP states that either party may appeal the arbitrator's decision in accordance with the FAA.

Lewis was subsequently hired by Circuit City, located in Topeka, Kansas, in September 1996 and was terminated in January 2003. On April 7, 2003, Lewis completed and signed an Arbitration Request Form (Form), stating: "I was fired on or about 1-4-03. I was not given a reason for the firing but I believe it was because I had informed my District Mgr. Corey Hovnanian that my knee had been hurt at work and I needed medical attention." The Form states:

> I hereby submit the above-described dispute for arbitration. I agree to
> accept the decision and award of the Arbitrator as final and binding as
> to all claims relating to my employment relationship with Circuit City or
> its affiliates which have been or could have been raised under my

Arbitration Agreement with Circuit City.

He submitted a waiver of the filing fee due to financial hardship at this time and also indicated that he was represented by counsel.

On May 22, 2003, a Dispute Resolution Agreement was drafted by NAM (The Arbitration Company) listing the parties as Michael J. Lewis and Circuit City Stores, Inc. The document explains that "this dispute" is submitted pursuant to Circuit City's DRRP and that the parties would be bound by the NAM arbitrator's decision. Plaintiff refused to sign this document. Months later, on August 14, 2003, Lewis submitted a typewritten "Arbitration Request," where he explained his claim in more detail: "Under Kansas Public policy, a termination of employment for an employee's efforts to exercise statutory rights under the Kansas Workers' Compensation Act constitutes unlawful retaliation and entitles the terminated employee to actual and punitive damages." This form does not include the previously quoted language agreeing to binding arbitration, and is signed by David Alegria, counsel for Lewis.

An arbitration hearing was held on February 25-27, 2004. The arbitrator was asked to determine Lewis' claims as well as a counterclaim by Circuit City. On April 30, 2004, the arbitrator rendered a decision that was favorable to Circuit City. The arbitrator articulated one of Lewis' claims as follows: "he was discharged in retaliation for seeking medical treatment required to be provided under the Kansas Workers' Compensation law and the possibility he may file a new Workers' Compensation claim." Lewis ultimately paid "thousands of dollars" in arbitration costs.

On December 20, 2004, Lewis filed a Petition in the District Court of Shawnee County, Kansas, claiming retaliation for exercising rights under the Kansas Workers' Compensation Act. He

5

stated in the Petition that he had "exhausted his arbitration remedies."  Circuit City removed the case to

this Court and filed the instant motion.

## III.  Discussion

### A.  *Applicable Law*

Section 2 of the FAA states:

> A written provision in any maritime transaction or a contract evidencing
> a transaction involving commerce to settle by arbitration a controversy
> thereafter arising out of such contract or transaction, or the refusal to
> perform the whole or any part thereof, or an agreement in writing to
> submit to arbitration an existing controversy arising out of such a
> contract, transaction, or refusal, shall be valid, irrevocable, and
> enforceable, save upon such grounds as exist at law or in equity for the
> revocation of any contract.[12]

Further, the United States Supreme Court has held that the FAA does not exclude from its coverage

arbitration clauses in employment agreements.[13]  If a claim is made in any court that is referable to

arbitration pursuant to such an agreement in writing, the FAA enables the court to stay the proceeding

and compel arbitration.[14]  The limitations articulated in section 2 of the FAA are the exclusive limitations

on the enforceability of agreements to arbitrate.  The issue of arbitrability is a substantive issue of

federal law and "Federal Law in terms of the Arbitration Act governs that issue in either state or federal

court."[15]

---

[12]  9 U.S.C. § 2.

[13]  *Adams v. Circuit City Stores, Inc.*, 532 U.S. 105, 119 (2001).

[14]  9 U.S.C. § 3.

[15]  *Southland Corp. v. Keating*, 465 U.S. 1, 12-13 (1984).  However, it is settled that claims governed by the
FAA may be made in either state or federal court.  *Id.* at 15-16.

The Supreme Court has stated: "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."[16]  The Court in *Perry v. Thomas*[17] held that the trial court erred in refusing to compel arbitration based on a provision of the California Labor Code which allowed a plaintiff to pursue an action to collect wages despite the existence of a private arbitration agreement.[18]  Citing *Southland Corp. v. Keating*, the Court held that section 2 of the FAA preempts the California Labor Code.[19]

Similar to the plaintiff in *Thomas*, Lewis argues that he is entitled to pursue an action for retaliatory discharge under Kansas law despite the arbitration agreement.  In support of this argument, he points to *Coleman v. Safeway Stores*,[20] where the Kansas Supreme Court held that a cause of action for retaliatory discharge for filing a claim for workers' compensation may be pursued based on Kansas state public policy, despite the existence of a collective bargaining agreement that contained an arbitration clause.[21]  Lewis's reliance on this case is misplaced, as the Kansas Supreme Court itself held in *Skewes v. Shearson Lehman Bros.*[22]  The plaintiff in *Skewes* also cited *Coleman* for the

---

[16] *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (quoting *Keating*, 465 U.S. at 10).

[17] *Id.*

[18] *Id.*

[19] *Id.* (citing *Keating*, 465 U.S. at 10).

[20] 752 P.2d 645 (Kan. 1988).

[21] *Id.* at 650-51.

[22] 829 P.2d 874 (Kan. 1992).

proposition that a retaliatory discharge claim was not subject to arbitration because of state law invalidating arbitration clauses in employment contracts.  The Kansas Supreme Court, after determining that the arbitration agreement clearly was subject to the FAA, stated:

> *Coleman* is distinguishable from the instant case.  The FAA was not involved in *Coleman*.  The United States Supreme Court has limited preemption by the LMRA where the state tort law purports to define the meaning of the contract relationship. . . . The United States Supreme Court has not limited the preemption by the FAA.  As to our reference in *Coleman* that arbitral procedures are comparatively inappropriate for the resolution of tort claims, we note that *Thomas* and *Southland Corp.* involved tort claims (fraud, breach of fiduciary duty) and that arbitration was required.[23]

Given this well-settled law on this matter, the Court finds that the FAA applies to the Application and incorporated DRA and DRRP at issue.  Not only do the documents clearly state that they are to be governed by the FAA, the Application falls within the scope of agreements contemplated by section 2 of the FAA.  Further, Lewis' assertion that state law would apply in this matter is mistaken.  His retaliatory discharge claim may not be independently litigated under state law because the FAA does not limit the arbitrability of tort claims and the FAA preempts any state law to the contrary.

**B.  Review**

Lewis requested and participated in the arbitration of his claim of retaliatory discharge.  Circuit City argues that summary judgment is appropriate because this claim was already decided by an arbitrator on April 30, 2004.  Lewis counters that he should not be bound by the arbitration award

---

[23] *Id.* at 878-79 (internal citations omitted).

because Circuit City's Application is unenforceable, because: (1) other courts have found Circuit City's Application to be unenforceable; (2) it lacks both mutuality and consideration, and is illusory; and (3) he only participated in arbitration in order to "exhaust arbitration remedies." Plaintiff maintains that he participated in arbitration under protest.

The Court must first address the scope of its review under the FAA. This case does not present the Court with a motion to compel arbitration,[24] or with a motion to confirm or vacate an arbitral award. Instead, this case presents the Court with a Complaint for retaliatory discharge that has already been decided by an arbitrator.[25] Having determined that the Application and incorporated documents are governed by the FAA, this Court's review of the arbitration decision is limited and it may not examine the arbitrator's interpretation of law or findings of fact.[26]

"Once a dispute is properly before an arbitrator, the function of the courts in reviewing the arbitrator's decision is quite limited."[27] "Once an arbitration award is entered, the finality that courts should afford the arbitration process weighs heavily in favor of the award, and courts must exercise great caution when asked to set aside an award. Because a primary purpose behind arbitration

---

[24] A Court may not compel arbitration without determining that the party contractually agreed to submit itself to arbitration. Deciding upon a motion to compel under section 3 of the FAA would be an appropriate time for the Court to consider arbitrability. To be sure, this issue would be in the Court's and not the arbitrator's province at that point in time. *See ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462-63 (10th Cir. 1995).

[25] The Court declines to analyze the issue of whether Lewis' claim falls within the scope of the arbitration agreement. This issue does not appear to be in dispute, as Lewis argues that the arbitration clause is unenforceable as a whole. In any event, the DRA explicitly defines the scope of employment claims covered by the agreement as including claims under the law of tort.

[26] *Denver & Rio Grande Western R.R. Co. v. Union Pacific R.R. Co.*, 119 F.3d 847, 849 (10th Cir. 1997).

[27] *Id.*

9

agreements is to avoid the expense and delay of court proceedings, it is well settled that judicial review of an arbitration award is very narrowly limited."[28]

Here, however, Lewis has failed to avail himself of the review provisions set forth in the FAA. Sections 9, 10, and 11 of the FAA provide parties with mechanisms allowing for judicial review of an arbitration award by asking a court to either confirm, modify, or vacate such an award.  "Under the Act, an arbitration award is final unless either party moves to vacate or modify the award under section 10 within the three month time period prescribed by section 12."[29]  Rather than seek review pursuant to the FAA, Lewis filed a Petition in state court for the exact claim that he pursued in arbitration.  But, the FAA is the exclusive remedy for challenging an arbitration award.[30]  The Court finds that this case is an improper attempt to collaterally attack an arbitration award by circumventing the appropriate procedures set forth under the FAA that govern the arbitration agreement.

Even if this Court liberally construes Lewis' Complaint as a motion to vacate the arbitration award, it was untimely.  Under 9 U.S.C. § 12, notice of a motion to vacate an arbitration award must be served on the adverse party within three months after the award is filed or delivered.[31]  The arbitrator's decision was entered on April 30, 2004 and the Petition in state court was not filed until December 20, 2004.  There is no evidence of an objection or other form of notice served upon

---

[28]  *Foster v. Turley*, 808 F.2d 38, 41-43 (10th Cir. 1986).

[29]  *Prudential Sec. Inc. v. Hornsby*, 865 F. Supp. 447, 450 (N.D. Ill. 1994) (citing *Corey v. NYSE*, 691 F.2d 1205, 1212 (6th Cir. 1982)); *see also Turley*, 808 F.2d at 42.

[30]  *Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 205 F.3d 906, 910 (6th Cir. 2000)

[31]  9 U.S.C. § 12; *see In re Robinson*, 326 F.3d 767, 771-72 (6th Cir. 2003).

defendant within three months of the arbitrator's decision.

Additionally, Lewis only challenges the enforceability of the arbitration agreement.  This is not an appropriate ground to challenge such an award, even if it is construed as a Motion to Vacate under section 10 of the FAA.  Not only did Lewis submit his claim to arbitration, he voluntarily requested arbitration on two occasions.  The first was the handwritten request form that he submitted and the second was a typewritten request form signed by Lewis' counsel.  Neither of these forms stated an objection to the arbitrability of the dispute, despite that fact that he opposed the "final and binding" language in the second form.  Nor does the arbitral award mention any objection to the arbitrability of the dispute.[32]  Plaintiff suggests he was somehow required to "exhaust his arbitration remedies" but cites no rule of law in support of this proposition.  Again, even if plaintiff participated in the arbitration proceeding under protest, he has had plenty of opportunities to oppose arbitration of the dispute under the provisions of the FAA and failed to do so.  This Court will not entertain a belated collateral attack on a final and binding arbitration award.

**IT IS THEREFORE ORDERED THAT** defendant's motion to dismiss, as converted to a motion for summary judgment (Doc. 6) is **GRANTED.**

**IT IS SO ORDERED**.

Dated this  7th  day of September 2005.

 S/ Julie A. Robinson

---

[32]  *See Prudential Sec., Inc.*, 865 F. Supp. at 452 (explaining that a party could perfect an objection to arbitration if it makes that objection clear at the outset); *cf. Keil-Koss v. Cigna*, 211 F.3d 1278,  2000 WL 531462, at *2 (10th Cir. May 3, 2000) (unpublished table decision) (finding the record supported district court's finding that plaintiff had expressly requested that his claim be submitted to arbitration).  Here, the only objection stated in the record is plaintiff's counsel's statement that he should be entitled to damages under Kansas law.  This is not a clear statement of an objection that the arbitral forum was inappropriate.

Julie A. Robinson
United States District Judge